# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MELISSA ARGABRIGHT, | Case No.: 2:17-cv-02630-WGC |
| Plaintiff | **Order** |
| v. | Re: ECF Nos. 24, 25 |
| ANDREW SAUL,<br>Acting Commissioner of<br>Social Security Administration, | |
| Defendant | |

Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 24.) The Acting Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's motion. (ECF Nos. 25, 26.) At the time Plaintiff filed her motion, Nancy A. Berryhill was the Acting Commissioner of the Social Security Administration. The current Acting Commissioner is Andrew Saul, and the caption reflects this change.

After a thorough review, Plaintiff's motion will be denied, and the Acting Commissioner's cross-motion will be granted.

## I. BACKGROUND

On or about August 24, 2015, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability with an amended onset date of May 10, 2014. (Administrative Record (AR) 315-330.) The applications were denied initially and on reconsideration. (AR 244-248.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 264-65.) ALJ Christopher R. Daniels held a hearing on March 28, 2017. (AR 88-109 .) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On April 20, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 50-62.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Acting Commissioner. (AR 1-7.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues that the ALJ failed to articulate legally sufficient reasons for discrediting Plaintiff's testimony. The Acting Commissioner, on the other hand, argues that the ALJ articulated compelling reasons for finding Plaintiff's subjective allegations of wholly disabling impairments were not supported by the record.

## II. STANDARDS

**A. Disability Process**

After a claimant files an application for disability benefits, a disability examiner at the state Disability Determination agency, working with a doctor(s), makes the initial decision on the claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the claim initially, the claimant may request reconsideration of the denial, and the case is sent to a different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council

determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in

20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).[1]

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also*

---

[1] The grids contain various combinations of factors that direct a finding of disabled or not disabled.

*Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm

the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since the alleged onset date of May 1, 2014. (AR 55.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: chronic constipation with colostomy bag, degenerative disc disease, osteoporosis, bipolar disorder, and generalized anxiety disorder. (AR 55.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 55-56.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform sedentary work, except she can: understand, remember and carry out instructions consistent with unskilled work; she is able to frequently interact with coworkers and supervisors; she is able to interact occasionally with the general public; and, she can adapt to routine work changes. (AR 57.)

The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 60.)

At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: document preparer, inspector and circuit board assembler. (AR 60-61.) As a result, the ALJ found Plaintiff not disabled from May 1, 2014, through the date of the decision. (AR 62.)

## B. Claimant Credibility

### 1. Plaintiff's Testimony

Plaintiff testified that her medications make her tired, but she needs them. She has a colostomy bag for severe constipation for many years. (AR 96.) She was taking Neurontin for an issue with the left shoulder scapula. (AR 97.) She has fibromyalgia, but was not seeing a rheumatologist or taking any medication for that condition. (AR 97-98.) She has peripheral vascular disease mainly in the right leg and she was taking medication for that issue, but it made it difficult to walk, stand and sit. She has to keep moving around and prop her legs up pretty high. (AR 98.) She has hyponatremia which causes hallucinations and racing thoughts for which she was hospitalized for a few weeks. She also has severe depression, bipolar disorder, generalized anxiety disorder, panic attacks, and obsessive compulsive disorder (OCD), and manic episodes that occur a couple times a week. (AR 99.) She was also diagnosed with attention deficit disorder (ADD). Medication has made it better than it was without medication, but she said it still did not really help her concentration. She starts crying unexpectedly, and attempted suicide in the past. She has panic attacks a couple of times a day and it takes her about a half hour to settle down. (AR 100.) She takes Xanax for that. She does not leave the house by herself, and a friend accompanied her to the hearing. She has to have someone go with her to do grocery shopping. She also has problems with anger. (AR 101.)

During the day she used to do "latch hook rugs" until her arthritis prevented her from doing that. Now, she watches television, tries to read the newspaper, and washes dishes in the sink. She visits her parents two to three times a week, and a friend takes her down to a breakfast buffet a couple of times a week. (AR 102.) She does not cook because she usually cannot stand long enough to do it, and eats things out of a can at home. Her father used to cook for her, and

now a friend does, or takes her out to eat. (AR 102-03.) Her mother used to do her laundry, but she does it now, but her friend will bring the basket over. She puts the clothes in the washer, and then her friend gets them out and puts them in the dryer and then brings them to her and she folds the clothes. (AR 103.)

She can sit for about an hour. She can probably stand long enough to do dishes and wipe down a counter. (AR 104.) She can walk one or two blocks before having to stop to rest. She cannot lift a gallon of milk. (AR 105.)

**2. ALJ's Reasoning for Discrediting Plaintiff's Testimony**

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record. (AR 57.) The ALJ went on to summarize the relevant mental health and medical evidence. (AR 58-59.) The ALJ then stated that Plaintiff's alleged disabling symptoms were not consistent with the longitudinal medical evidence; and, despite allegations of physical and psychological limitations, the objective findings did not support the presence of a medically determined impairment that could be expected to cause the symptoms of the type and severity alleged. The ALJ noted that throughout the record she had routine medical treatment with no notable exacerbations, which called into question the gravity of her allegations of debilitating medical impairments. Next, the ALJ said that the lack of treatment was inconsistent with the allegations of significant symptoms. (AR 59.) The ALJ then indicated that her testimony showed she was able to concentrate well enough to answer the ALJ's questions in detail. (AR 59-60.) The ALJ also indicated that Plaintiff's minimal

psychiatric records revealed benign symptoms that were controlled with medication, and her latest records revealed she was doing well. (AR 60.)

**4. Analysis**

"[A] claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing SSR 96-7P)). Thus, a claimant's credibility is often crucial to a finding of disability. The ALJ is responsible for determining credibility. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

There is a two-step test for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014-15 (internal quotation marks and citations omitted, emphasis original).

Plaintiff argues the ALJ did not set forth legally sufficient reasons for discrediting her testimony because an ALJ cannot discredit her testimony as to the severity of her symptoms merely because they are unsupported by the objective medical evidence. Otherwise, Plaintiff contends that the ALJ only relied on his observations regarding Plaintiff's appearance at the

hearing and ability to respond to questions, which Plaintiff also contends is insufficient. As a result, Plaintiff asks the court to remand for the award of benefits.

The Acting Commissioner argues that the ALJ did articulate compelling reasons for finding Plaintiff's subjective claims were not supported by the record: the allegations were inconsistent with the objective medical evidence, Plaintiff's level of treatment was generally routine, Plaintiff's psychiatric treatment was minimal, and showed Plaintiff's symptoms were well-controlled on medication, there was a lack of treatment or only conservative treatment; her daily activities were inconsistent with her reports of debilitating symptoms, and she had sufficient concentration at the hearing to answer questions in detail.

The parties are correct that Plaintiff's testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Under the prior and current version of the regulations, factors relevant to the analysis of symptom testimony include: daily activities; the location, duration, frequency and intensity of the pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the pain or symptoms; treatment, other than medication, received for relief of pain or symptoms; and any measures used to relieve pain or symptoms and other factors concerning functional limitations and restrictions. *See* 20 C.F.R. § 1529(c)(3) (version effective June 13, 2011 to March 26, 2017 and version effective March 27, 2017 to present).

Inconsistency with the objective medical evidence appears to be the primary reason the ALJ discredited Plaintiff's testimony. The court will address below whether the ALJ asserted additional reasons supported by the record for discrediting Plaintiff's testimony. Preliminarily,

though, the court finds that substantial evidence in the record supports the ALJ's conclusion that Plaintiff's testimony is inconsistent with the objective medical evidence.

Insofar as Plaintiff testified that her medications make her tired, most of the notations in the records indicate that Plaintiff was taking her medications as directed without adverse side effects. When she did experience side effects, her medications were changed or adjusted. She reports that she had a colostomy bag placed, and the records reflect that after that surgery and the revisions her symptoms greatly improved. She complained of scapular pain, and the records show she was referred to orthopedics and had imaging done which was normal. Her treatment records for this issue are very minimal, but reflect that when she complained of further pain she was prescribed Naproxen, Flexeril and a topical for her pain in that area.

Plaintiff testified that she had pain from fibromyalgia. Dr. Rodney Ison made notes of fibromyalgia in June and July of 2014. (ECF Nos. 550, 554, 557, 560.) It appears she was prescribed medications, including Savella (which was discontinued when it caused her headaches), and then Norco and Xanax, as well as Straterra and Trazodone. (AR 550, 554, 557, 560.) There were no further treatment records regarding fibromyalgia. When she was seen for a peripheral vascular disease consult on March 16, 2016, she reported that she had a history of Reynaud's phenomenon, which had not been worked up (and is not documented in the record). The provider noted that she might be referred to a rheumatologist for further evaluation. (AR 882.) Her labs showed no sign of autoimmune disease. (AR 861.) Plaintiff acknowledges she was not being treated for or taking medication for fibromyalgia.

She also testified she had peripheral vascular disease which caused her difficulty walking, standing and sitting, and that it required her to keep moving or prop her legs up high. It appears that Plaintiff was first assessed with peripheral vascular disease on May 1, 2014 by

Dr. Ison, and he ordered imaging of the bilateral lower extremities. In subsequent visits in May and early June of 2014, she was prescribed medication, including Prednisone and Savella. Savella gave her headaches, and it was discontinued. Labs were also ordered. (AR 544-47, 550-52.) The next reference to peripheral vascular disease is on February 8, 2016, when she reported increased pain in her bilateral feet at University Medical Center. (AR 688.) She had a consultation for this the following month, on March 16, 2016, and reported bilateral foot pain and numbness and tingling in the toes and top of the foot. She did state that her symptoms improved somewhat since she had been living in a warmer climate. She had diminished pedal pulses and atrophic changes to the skin. The provider recommended a CT angiogram to determine if occlusive disease was involved and said that it may be worthwhile to refer her to a rheumatologist for further evaluation. (AR 882.) The imaging was normal and there was no evidence of occlusive disease. (AR 881.) As noted above, her labs showed no sign of autoimmune disease. (AR 681.) She was referred to a vascular surgeon. (AR 863.) She was not seen again until August 16, 2016. There is a notation she had been referred to a podiatrist and vascular surgeon. She was taking Pletal for this condition, and reported that she still had pain in her legs but it was not as severe. She stated that she was trying to be more active and was going to try and start walking more. She was given refills of Gabapentin/Neurontin for the peripheral neuropathy caused by her vascular disease, and labs were ordered. (AR 752-54.) The next record is from March 20, 2017, which reflects that she was referred to physical therapy for her right foot pain, and her Gabapentin dose was increased. In sum, the records regarding her peripheral vascular disease do not support her claims of significant limitation with respect to her ability to walk, stand and sit or the need to prop her legs up high. Instead, the records, including her psychological records, reveal that she was generally quite active, with consistent reports of

13

walking, and she also engaged in swimming and biking. These records also contradict her testimony that she had to rest after walking for two blocks.

Next, Plaintiff testified that she suffers from hyponatremia. Plaintiff's records reveal that she suffered two incidents of hyponatremia after drinking excessive amounts of water in 2013. She was hospitalized both times and her sodium levels were corrected. She also had associated psychological symptoms during these episodes, but there are no other events related to hyponatremia in the record or an indication that this condition caused subsequent psychological symptoms.

Finally, Plaintiff's testimony concerning the severity of her psychological symptoms is not supported by her medical records. She reported that she had manic episodes a couple of times a week, and panic attacks a couple of times a day. The notes from her treating psychiatrist, Saleha Baig, M.D. are minimal, and mainly discuss Plaintiff's medication management. While Dr. Baig noted that Plaintiff reported panic attacks when she first saw her in March of 2015, her other progress notes stated that Plaintiff suffered from anxiety and depression overall did not contain any substantive discussion about her panic attacks. In fact, the records from Dr. Baig were overall devoid of any substantive discussion of Plaintiff's mental health condition. A record from January 25, 2016, said that plaintiff had mild panic attacks, but did not discuss the frequency. (AR 816-17.) A record from March 2016, said that Plaintiff was "doing well" and she had anxiety, denied depression and denied symptoms. (AR 813.) Nor do Dr. Baig's records support Plaintiff's claim of manic episodes several times a week. Dr. Baig diagnosed Plaintiff with major depressive disorder, and on January 25, 2016, and also noted Plaintiff had bipolar I disorder with moderate mania and major depression in partial remission. (AR 816-17.) In March

of 2016, Plaintiff was assessed with depressive disorder with a single episode, remission status unspecified. (AR 808, 813.)

The records from Plaintiff's treating therapist, Patricia Delgado, MFT, on the other hand, are very detailed, but also do not support Plaintiff's claim of debilitating, frequent panic attacks and manic episodes.

Plaintiff also testified that she had problems with anger, but there is minimal mention of anger in her psychological records.

In sum, the ALJ properly discredited Plaintiff's testimony on the basis that it was inconsistent with the objective medical evidence is supported by the record.

Now, because an ALJ cannot rely solely on inconsistency with the objective medical evidence to discredit a claimant's testimony, the court will assess whether the ALJ set forth other clear and convincing reasons supported by the record for discrediting Plaintiff's testimony.

The ALJ said the Plaintiff was able to concentrate well enough to answer the ALJ's questions in detail. In 1985, the Ninth Circuit described an ALJ's reliance on his personal observations of a claimant at the hearing as having "been condemned as 'sit and squirm' jurisprudence." *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (citing *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982)). In *Freeman,* the Eleventh Circuit explained: "In this approach, an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied." *Freeman*, 681 F.2d at 731. This "will not only result in unreliable conclusions when observing claimants with honest intentions, but may encourage claimants to manufacture convincing observable manifestations." *Id*.

In 2011, the Ninth Circuit held that "the ALJ's personal observations of [the claimant] do not constitute substantial evidence for rejecting any of the opinions of the [claimant's] physicians who have found [the claimant] psychologically impaired" in the context where the ALJ noted that the claimant demonstrated excellent cognitive abilities during the hearing. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011)(citation omitted). Other district courts have also held that an ALJ may not rely on his or her personal observations to support rejection of the claimant's testimony. *See Raab v. Berryhill*, No. 18-cv-4041-YGR, 2019 WL 2515828, at *11 (N.D. Cal. June 18, 2019); *Sanchez v. Berryhill*, No. ED CV 16-1774 FMO (MRW), 2018 WL 4694349, at *8 (C.D. Cal. July 19, 2018). In *Sanchez*, the ALJ similarly noted that the claimant was able to testify during the hearing and able to adhere to proper hearing decorum in support of the conclusion that the claimant was only mildly limited in social functioning. The court remarked: "Under that standard, an ALJ could always rely on the testimony of a social security claimant who did nothing more than testify on his own behalf to find not only that the claimant is always mildly limited but also to reject the opinions of the claimant's physicians who relied on the claimant's statements." *Id*.

The Commissioner contends that it was proper for the ALJ to consider his own observations of Plaintiff at the hearing in discrediting her testimony, citing 20 C.F.R. 404.1529(c)(3), and *Thomas v. Barnhart*, 278 F.3d 948, 960 (9th Cir. 2002) (an ALJ may consider demeanor in evaluating credibility). *Thomas* was decided in the context of the ALJ's use of "ordinary techniques of credibility evaluation" where the ALJ noted that the claimant "seemed to engage in considerable histrionic exaggeration." *Id*. It was not a case where the ALJ made a conclusion about the ALJ's psychological ability to concentrate based on how she conducted herself at the hearing, as occurred here.

16

The court finds that the claimant's ability to concentrate well enough to answer questions at the hearing was not a clear and convincing reason to discredit her testimony. Nevertheless, the ALJ did articulate several other reasons for discrediting Plaintiff's testimony: that Plaintiff received only routine medical treatment or there was a lack of treatment indicating Plaintiff was not as disabled as she alleged; and, that her minimal psychiatric records showed that her symptoms were controlled with medication and her latest records showed she was doing well.

As was noted above, with respect to Plaintiff's claims of limitations or restrictions due to fibromyalgia, scapular pain, and peripheral vascular disease, Plaintiff received minimal or no treatment. Thus, the ALJ properly cited this as a reason for discrediting Plaintiff's testimony.

In addition, with respect to Plaintiff's psychological issues, the ALJ's statement accurately reflects the minimal nature of the psychiatric records from Dr. Haig. As was discussed above, Dr. Haig's records contain little substantive discussion regarding Plaintiff's condition and instead reflect simply medication management. Moreover, Plaintiff's records from Ms. Delgado do reflect continued improvement over the course of her therapy sessions and do not reflect endorsement of functional limitations alleged by Plaintiff.

Under the regulations, these are appropriate reasons for discrediting a claimant's testimony. In addition, they are supported by the evidence in the record. Therefore, the ALJ set forth clear and convincing reasons supported by substantial evidence in the record for discrediting Plaintiff's testimony. Therefore, Plaintiff's motion for reversal and/or remand will be denied, and the Acting Commissioner's cross-motion to affirm will be granted.

## IV. CONCLUSION

IT IS HEREBY ORDERED:

(1) Plaintiff's motion for reversal and/or remand (ECF No. 24) is **DENIED**; and

(2) The Acting Commissioner's cross-motion to affirm (ECF No. 25) is **GRANTED**; and

(3) The Clerk shall enter judgment accordingly.

Dated: March 9, 2020

William G. Cobb
United States Magistrate Judge